UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADRIAN RITA and JILL PHELAN-RITA,<br><br>Plaintiffs,<br><br>v.<br><br>GREENSKY MANAGEMENT COMPANY, LCC, GREENSKY, LCC, and GREENSKY ADMINISTRATIVE SERVICES, LLC,<br><br>Defendants. | Case No. 1:23-cv-00044-REP<br><br>**MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTIONS TO AMEND** |

Pending before the Court are Defendants' motion to dismiss (Dkt. 40), Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. 47), and Plaintiffs' Amended Motion for Leave to File a Second Amended Complaint (Dkt. 54). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Dkt. 10. For the reasons set forth below, Plaintiffs' Fair Debt Collection Practices Act claims may proceed with discovery. The Court dismisses Plaintiffs' other claims, but will allow Plaintiffs leave to amend the § 1681s-2(b) Fair Credit Reporting Act claim.

## PROCEDURAL HISTORY

This lawsuit arises out of Defendants' attempts to collect money from Plaintiffs on a home renovation loan. *See generally* Compl. (Dkt. 2-5). Defendants financed improvements to Plaintiffs' residence using a local vendor named "Cabinets of Boise, LLC, dba Kitching Tune-Up." *Id.* ¶¶ 10-11. Defendants subsequently attempted to collect on the obligation. According to Plaintiffs, these attempts involved making dozens of harassing phone calls, at all hours of the day and night, despite Plaintiffs informing Defendants that Plaintiffs were represented by

**MEMORANDUM DECISION AND ORDER** – PAGE 1

counsel and were disputing the debt.  *Id.* ¶¶ 13-20.

On December 21, 2022, Plaintiffs filed a complaint in state court accusing Defendants of violating the Fair Debt Collection Practices Act (the "FDCPA") and the Fair Credit Reporting Act (the "FCRA").  *Id.* ¶¶ 25-32.  Defendants removed the case to federal court on January 27, 2023.  *See* NOR (Dkt. 1).

On June 29, 2023, Plaintiffs timely filed a motion to amend the complaint, which the Court granted in part and denied in part.  *See* 9/13/2023 MDO (Dkt. 34).  The first amended complaint asserted identical claims to the original complaint.  *Compare* Dkt. 2-5 *with* Dkt. 35.  The only difference was the addition of uncontested information about Defendants' corporate parentage.

Rather than answer the amended complaint, however, Defendants filed a motion to dismiss challenging the legal sufficiency of Plaintiffs' FDCPA and FCRA claims under Federal Rule of Civil Procedure 12(b)(6).  MTD (Dkt. 40).  This motion sparked a flurry of briefing.  On December 11, 2023, Plaintiffs responded to the motion to dismiss by moving to amend the complaint.  Mtn. to Amend (Dkt. 47).  Less than a month later, Plaintiffs filed an amended motion to amend, proposing even more additions to the complaint.  Amended Mtn. to Amend (Dkt. 54).  Defendants maintain that neither of the proposed amendments fix the deficiencies in the complaint and that Plaintiffs' requests to amend should be denied as futile and the lawsuit should be dismissed in its entirety.  Defs' Rsps (Dkts. 52 and 56).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When evaluating a Rule 12(b)(6) motion, the court accepts as true all well-pleaded factual allegations

in the complaint, disregarding any unsupported legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Next, having identified the adequately pleaded facts, the Court "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Stated concisely, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.

If a motion to dismiss is granted, the Court can grant a party leave to amend under Federal Rule of Civil Procedure 15(a)(2). *DeSoto v. Yellow Freight Sys.,* 957 F.2d 655, 658 (9th Cir. 1992). Generally speaking, such leave should be granted unless the proposed amendment would be futile. *Id.*; *see also* Fed. R. Civ. P. 15(a) (prior to trial, "[t]he court should freely give leave" to amend a complaint "when justice so requires").

## DISCUSSION

I. Plaintiffs' FDCPA Claim

All four iterations of Plaintiffs' complaint – the original complaint, the first amended complaint, and both versions of the proposed second amended complaint – assert FDCPA claims against Defendants. Defendants do not challenge the liability elements of these claims. They maintain, however, that Plaintiffs have not properly alleged damages.

A debt collector who violates the FDCPA is liable for actual damages caused by the misconduct plus statutory damages up to $1,000. 15 U.S.C. § 1692k(a). In other words, a plaintiff may recover both actual and statutory damages under the FDCPA. Defendants acknowledge these provisions and concede that Plaintiffs may recover $1,000 in statutory damages, should they prevail on the merits of their FDCPA claims.[1] MTD at 5-6 (Dkt. 40-1).

---

[1] Some of the language in Defendants' briefing obfuscates this fact. *See*, *e.g.*, Defs' Reply to MTD at 4 (Dkt. 51) ("Without a showing of actual damages, there should be no recovery under the FDCPA."). The Court understands this to be imprecise writing, not an assertion that Plaintiffs must allege actual damages to obtain statutory damages. If the Court has

**MEMORANDUM DECISION AND ORDER** – PAGE 3

Defendants, nevertheless, ask the Court to dismiss Plaintiffs' FDCPA claims in their entirety because (i) Plaintiffs do not allege sufficient facts to support a claim of actual damages, (ii) Plaintiffs ask for $1,000 in statutory damages per violation, when Defendants believe such damages are capped at $1,000 per action, (iii) Plaintiffs seek additional statutory damages in an amount that is only available in class action lawsuits, and (iv) Plaintiffs request injunctive relief, which is not an authorized remedy under the FDCPA. *Id.* at 4-7.  In effect, Defendants ask the Court to throw the baby out with the bathwater.

The Court declines this request.  The purpose of a motion to dismiss is to weed out claims on which relief cannot be granted.  *See* Fed. R. Civ. P. 12(b)(6).  It would be improper for the Court to dismiss Plaintiffs' FDCPA claims in their entirety simply because there is a dispute about how much damages Plaintiffs can legally recover.

To the extent Defendants are asking the Court to dismiss some, but not all, of Plaintiffs' prayers for relief, Defendants arguments suffer a variety of flaws.  First, Plaintiffs have addressed the majority of Defendants' concerns about damages through their proposal to amend the complaint.  Plaintiffs' proposed amendments (i) drop Plaintiffs' request for $1,000 in statutory damages per violation, (ii) omit any reference to calculating damages based on Defendants' net worth, as permitted in class action lawsuits, and (iii) remove the request for the Court to enter a permanent injunction preventing future FDCPA violations.  *Compare* Pls' First Amended Compl. ¶¶ 30, 35, 42 and pg. 7 (Dkt. 35) *with* Second Proposed Second Amended Compl. ¶¶ 32, 69-74, and pg. 17 (Dkt. 54, pgs. 6-17).  As far as the Court can tell, these amendments have resolved Defendants' arguments about statutory damages and injunctive relief.

---

misunderstood Defendants' position, however, it does not change the outcome of the case.  It is well-settled law that statutory damages are available under the FDCPA without proof of actual damages.  *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982).

**MEMORANDUM DECISION AND ORDER – PAGE 4**

Second, Defendants' arguments about actual damages are premature. The primary thrust of Defendants' briefing is that Plaintiffs' emotional distress is not severe enough to require recompense and that Plaintiffs' other damages were not caused by the FDCPA violations. Tellingly, Defendants fail to cite even one case where a Court granted a motion to dismiss on these grounds.[2] The cases on which Defendants rely involve the level of proof required to survive summary judgment, prevail at trial, or obtain a default judgment. *See*, *e.g.*, *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (the district judge properly dismissed the plaintiff's request for emotional distress damages after the close of evidence at trial); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001) (vacating a jury's award of emotional distress damages); *Eckenrode v. Rubin & Yates, LLC*, No. 2:13-CV-00317-GMN, 2014 WL 4092266, at *9 (D. Nev. July 28, 2014) (refusing to award emotional distress damages on a motion for default judgment); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (approving a class settlement after the Court dismissed a claim for actual damages at summary judgment); *Bolton v. Pentagroup Fin. Servs.*, LLC, No. CIV-F-08-0218 AWI GS, 2009 WL 734038, at *11 (E.D. Cal. Mar. 17, 2009) (barring a claim for emotional distress damages at summary judgment); *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1080 (E.D. Cal. 2007) (same).

The standard at this stage is much more forgiving: facial plausibility. *See Iqbal*, 556 U.S.

---

[2] There is a strong argument that such motions are procedurally improper. *See Sturm v. Rasmussen*, No. 18-CV-01689-W-BLM, 2019 WL 626167, at *3 (S.D. Cal. Feb. 14, 2019) (noting "the growing number of district court cases finding Rule 12(b)(6) generally inapplicable to damage prayers"). When, as here, it is undisputed that Plaintiffs can obtain some relief, it is inefficient to ask the Court to resolve fact-based disputes over the amount or type of damages based solely on the pleadings. The Court agrees that the best practice is defer such issues until discovery has occurred. *See* Fed. R. Civ. P. 1 (the federal rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

at 678.  Only where a plaintiff fails to nudge his claims across the line from conceivable to plausible will a complaint be dismissed under Rule 12(b)(6).  *See Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) ("Rule 8(a) does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence to support the allegations.") (internal citation omitted).  Plaintiffs' proposed amended complaint satisfies this standard.

Plaintiffs allege that Defendants made numerous calls attempting to collect a contested debt, including to Plaintiffs' places of employment.  *See* Second Proposed Second Amended Compl. ¶¶ 14, 20-21 (Dkt. 54, pgs. 6-17).  Plaintiff Jill Phelan-Rita claims her work performance suffered due to the calls and other collection efforts.  *Id.* ¶ 22.  This is enough for the Court to reasonably infer that Plaintiffs sustained actual damages.  The Court need not parse Plaintiffs' damages claim further at this stage of the proceeding.

 II.  Plaintiffs' FCRA Claim

The FCRA regulates "the creation and use of consumer [credit] reports."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).  The Act imposes requirements on two different types of entities: (i) consumer reporting agencies and (ii) those who furnish consumer reporting agencies with information about consumer debts ("furnishers").  *See* 15 U.S.C §§ 1681a(f) and 1681s-2.  Confusingly, Plaintiffs allege that Defendants fall into both categories.  *See* Second Proposed Second Amended Compl. ¶ 38 (Dkt. 54, pgs. 6-17).

It is unclear whether this is possible.  *See* 12 C.F.R. § 1022.41(c) ("[a]n entity is not a furnisher when it . . . [i]s acting as a consumer reporting agency . . .").  Even if it is possible, the Court agrees with Defendants that none of the complaints support a finding that Defendants are consumer reporting agencies.  The FCRA defines a consumer reporting agency as:

**MEMORANDUM DECISION AND ORDER – PAGE 6**

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C § 1681a(f). As Defendants stress, a consumer report does not include "information solely as to transactions or experiences between the consumer and the person making the report." § 1681a(d)(2)(A)(i). A consumer reporting agency is an entity like TransUnion, Equifax, or Experian. *See Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2002). The complaints contain nothing of substance that would permit the Court to find that Defendants are engaged in this type of business.

That does not end the inquiry, of course. A furnisher is "generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers" to consumer reporting agencies. *Callahan v. Equifax Info. Servs. LLC*, No. C 13-02181 WHA, 2013 WL 5503949, at *2 (N.D. Cal. Oct. 3, 2013); *see also Gross*, 33 F.4th at 1251 ("CitiMortgage supplied information about [the plaintiff's] debts to the national credit reporting agencies, making it a 'furnisher' under FCRA"). Defendants refuse to admit that they are, in fact, furnishers, but do not ask for the dismissal of the complaint on this basis.

Instead, Defendants maintain that Plaintiffs' complaint is too conclusory to support a claim that Defendants violated any of the duties that the FCRA imposes on furnishers. The Court agrees. Section 1681s-2 of the FCRA sets forth the legal responsibilities of furnishers. Under § 1681s-2(a), furnishers of credit information have a duty "to provide accurate information" to consumer reporting agencies. In addition, § 1681s-2(b) requires a furnisher to conduct a reasonable investigation after receiving a notice of dispute from a consumer reporting agency. It is not clear to the Court whether Plaintiffs are seeking to proceed under both

**MEMORANDUM DECISION AND ORDER – PAGE 7**

subsections or only § 1681s-2(b).

If Plaintiffs intended to assert § 1681s-2(a) claims, these claims are not viable. In *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), the Ninth Circuit held that § 1681s-2(a) does not create a private cause of action. *Id.* at 1154 ("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies").

Section 1681s-2(b), by contrast, does permit private suits. *Id.* But Plaintiffs' FCRA allegations do no more than regurgitate snippets of the statutory language, without alleging facts to support each element of the cause of action. This is not enough. To proceed on a claim against a furnisher for failing to properly respond to a dispute, a plaintiff must allege facts showing that:

> (i) a credit reporting inaccuracy existed on the plaintiff's credit report;
>
> (ii) the plaintiff notified a consumer reporting agency that the plaintiff disputed the reporting as inaccurate;
>
> (iii) the consumer reporting agency notified the furnisher of the dispute; and
>
> (iv) the furnisher failed to reasonably investigate the inaccuracies or failed to comply with some other requirement in 15 U.S.C. 1681s-2(b)(1)(A)-(E).

*Yu v. Tesla Energy Operations, Inc.*, No. CV 21-0062 FMO (KSX), 2022 WL 3575314, at *3 (C.D. Cal. Mar. 7, 2022); *see also Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("to prevail on a FCRA claim against a furnisher, a consumer must make a prima facie showing that the furnisher's report was inaccurate") and *Gorman*, 584 F.3d at 1154 (a furnisher's duty to respond to a dispute "arise only after the furnisher receives notice of dispute from a [consumer reporting agency]; notice of a dispute received directly from the consumer does not trigger [a furnisher's] duties under subsection (b).").

None of Plaintiffs' complaints – either filed or drafted – contain any indication that Plaintiffs initiated a dispute with a consumer reporting agency or that a consumer reporting agency relayed this dispute to Defendants. Nor do the complaints provide any factual content regarding the nature of Plaintiffs' dispute or Defendants' response to the dispute. Without this information, the complaint lacks the factual content necessary to state a plausible FCRA claim against Defendants for reporting inaccurate information about Plaintiffs' debt.

### III. Leave to Amend Plaintiffs' FCRA Claims

Ordinarily, when a complaint is subject to dismissal, a court will grant leave to amend, unless it is apparent that allowing amendment would be futile. *DeSoto*, 957 F.2d at 658. Given the procedural posture of the case, the Court questions whether Plaintiffs' FCRA claims can be cured by amendment. The Court, however, is not prepared to say that it would be impossible for Plaintiffs to cure the defects in the § 1681s-2(b) claim. Notably, Plaintiffs' prior attempts at amendment were made without the benefit of the Court's ruling on the motion to dismiss. Out of an abundance of caution, the Court will give Plaintiffs a final opportunity to fix their § 1681s-2(b) FCRA claim.

This is not an invitation to prolong the litigation of an unsound claim. Rule 11 prohibits the filing of claims that are not grounded in fact and warranted by law. The Court encourages Plaintiffs' counsel to make a realistic assessment of Plaintiffs' ability to allege facts supporting a FCRA claim. If Plaintiffs are unable to assert facts supporting each element of a § 1681s-2(b) claim, as set forth above, Plaintiffs should remove this claim from the complaint. If, however, Plaintiffs believe they can assert such facts, they may amend their complaint to add these facts.

### IV. Plaintiffs' Federal Trade Commission Act Allegations

In their second proposed complaint, Plaintiffs include a new paragraph that accuses

**MEMORANDUM DECISION AND ORDER – PAGE 9**

Defendants of violating the Federal Trade Commission Act (the "FTCA"). *See* Second Proposed Second Amended Compl. ¶ 61 (Dkt. 54, pgs. 6-17). As Defendants point out, the FTCA does not create a cause of action for private litigants. *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973) ("The protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission."). To the extent Plaintiffs are attempting to assert claims under the FTCA, these claims are futile.

V. Plaintiff Adrian Rita's Standing

In the response to Plaintiffs' amended motion to amend, Defendants argue for the first time that the Court should dismiss the claims of Plaintiff Adrian Rita because he was not a party to any transaction with Defendants and Defendants never sought to collect a debt from him. Defs' Rsp. at 15-16 (Dkt. 56). The problem with this argument is that it is not grounded in the allegations of the complaint. From the beginning of this lawsuit, Plaintiffs have alleged that Defendants created "an account in *Plaintiffs'* name to finance improvements for home construction of *their* home." *See* Compl. ¶ 11 (Dkt. 2-5) and Second Proposed Second Amended Compl. ¶ 12 (Dkt. 54, pgs. 6-17) (emphasis added). The complaints also state that Defendants "continued to call *Plaintiffs* frequently in an attempt to collect a disputed debt." Compl. ¶¶ 16, 19 (Dkt. 2-5) and Second Proposed Second Amended Compl. ¶ 17, 20 (Dkt. 54, pgs. 6-17) (emphasis added). At this stage of the proceeding, the Court accepts Plaintiffs' allegations as true. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016).

VI. Defendants' Request for Sanctions

Defendants ask the Court award them attorneys' fees and costs as a sanction for Plaintiffs' piecemeal requests to amend the complaint. Under 28 U.S.C. § 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the

court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In addition, a district court has the inherent power to sanction counsel for acting in bad faith. *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). Both types of sanctions require a finding of bad intent or improper purpose. *See id.* and *Kohler v. Flava Enters.*, 779 F.3d 1016, 1020 (9th Cir. 2015) (section 1927 sanctions require proof that the opposing party acted with "subjective bad faith").

Plaintiffs' filing of repetitive motions to amend walks close to this line. The Court, however, does not believe Plaintiffs' counsel was acting in bad faith. There is no evidence that Plaintiffs' counsel filed repetitive motions to gain a tactical advantage or impose undue costs on Defendants. From the Court's perspective, Plaintiffs' motions to amend represent sincere attempts to respond to the concerns of opposing counsel or the Court. For example, Plaintiff filed the second motion to amend in response to Defendants' motion to dismiss. Similarly, Plaintiffs filed the amended motion to amend after a routine status conference where the Court asked Plaintiffs' counsel to identify the provisions of the FCRA under which Plaintiffs were asserting claims. In short, Plaintiffs' efforts to amend the complaint have been piecemeal and scattershot, but not oppressive, vexatious, malicious, or otherwise in bad faith.

Nor do Plaintiffs bear sole responsibility for unreasonably multiplying the motion practice in this case. Defendants waited almost nine months after the case was removed, well into the discovery process, to file a motion to dismiss raising arguments that could have been asserted at the beginning of the lawsuit. While some of the arguments in this motion are meritorious, asking the Court to dismiss Plaintiffs' entire FDCPA claims was unjustified given the undisputed availability of statutory damages. The Court will not exercise its discretion to award Defendants fees for a response that spends so much time on such a flimsy argument.

**MEMORANDUM DECISION AND ORDER – PAGE 11**

VII.  Discovery Deadlines

Defendants' request an extension of the discovery deadlines in the event the Court denies the motion to dismiss. Defendants should confer with Plaintiffs regarding this request. If the parties agree that the discovery deadlines should be extended, they may file a stipulation with the Court. If an agreement cannot be reached, Defendants may file an opposed motion to extend the deadlines setting forth proposed dates for an amended scheduling order.

## ORDER

IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss (Dkt. 40) is GRANTED in part and DENIED in part.

    a. Plaintiffs' FDCPA claims may proceed through discovery.

    b. The Court dismisses Plaintiffs' FCRA claims with leave to amend the § 1681s-2(b), and only the § 1681s-2(b), claim.

2. Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. 47) is DENIED as moot, in light of Plaintiffs' Amended Motion for Leave to File a Second Amended Complaint (Dkt. 54).

3. Plaintiffs' Amended Motion for Leave to File a Second Amended Complaint (Dkt. 54) is GRANTED in part and DENIED in part.

    a. Plaintiffs may amend their FDCPA claims as proposed.

    b. Plaintiffs may not add FTCA claims to the complaint.

    c. If Plaintiffs can allege facts supporting each element of a § 1681s-2(b) FCRA claim, Plaintiffs may keep this claim in the second amended complaint. If Plaintiffs are unable to allege additional facts supporting the § 1681s-2(b) claim, Plaintiffs should remove the claim from the complaint.

      d. Plaintiffs shall remove all other FCRA claims from the complaint.

4. By March 22, 2024, Plaintiffs shall file a second amended complaint that complies with this memorandum decision and order.

DATED: March 04, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER – PAGE 13**