UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ADRIAN RITA and JILL PHELAN-RITA, <br><br> Plaintiffs, <br><br> v. <br><br> GREENSKY MANAGEMENT COMPANY, LLC, GREENSKY, LLC, and GREENSKY ADMINISTRATIVE SERVICES, LLC, <br><br> Defendants. | Case No. 1:23-cv-00044-REP <br><br><br><br><br> MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 92). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 10). For the reasons set forth below, Defendants' motion will be granted.

## I. BACKGROUND

This case arises from a home renovation gone bad. Plaintiffs Jill and Adrian Rita, a Boise couple, hired a contractor to update their kitchen. To pay for the project, they entered into a loan agreement administered by Defendants. Unfortunately, the contractor's work failed to meet the Ritas' expectations, and a dispute ensued. Amidst that dispute, they failed to make payments on their loan. Greensky attempted to collect on the debt and eventually charged it off as delinquent. In response, the Ritas filed suit, alleging violations of the Fair Credit Reporting Act (FCRA) and Fair Debt Collection Practices Act (FDCPA).

A.   **Factual Background**

1

In April 2021, Jill and Adrian Rita attended a home improvement show, where they met a home contractor. Pls.' Resp. at 2 (Dkt. 95). They agreed to retain the home contractor to remodel their kitchen.

The Ritas decided to finance the remodel through a program administered by Defendants Greensky. Greensky – a financial intermediary between banks, small businesses, and their customers – allows merchants (here, a home contractor) to quickly offer financing options to prospective buyers. Compl. at ¶ 11 (Dkt. 59). Greensky's business model is particularly useful for large, one-off purchases, such as home improvements. Although other banks provide the funds, Greensky administers the loans. *Id.* at ¶ 13.

The Ritas' loan was similar to a line of credit. It authorized a draw of up to $14,000 to pay for work on the kitchen remodel during a specified "purchase window" in the spring and summer of 2021. *See* Pls.' Resp. at 7. It then provided for a one-year "promotional period," beginning from the date of the first draw on the loan, during which no payments would be required (although interest would continue to accrue). *Id.* Finally, at the end of the promotional period, monthly payments on the loan were required. The Ritas completed an online credit application while at the show. Pls.' Resp. at 2. However, while Jill and Adrian were both present at the show, Jill was the sole applicant on the loan documents.

In early April 2021, the Ritas made their first draw on the loan. *Id.* That triggered the clock on the promotional period, meaning they would need to begin making payments around April 2022. Over the next few months, the Ritas made further draws, borrowing roughly $8,600 in total to pay for their kitchen remodel.

While the lending process went smoothly, the renovation was a disappointment to the Ritas. According to them, their home contractor delayed the installation date multiple times.

Then, the home contractor apparently performed second-rate work, poorly installing cabinets and leaving excess material in the garage. *Id.* at 3. The Ritas claim they unsuccessfully tried to get the home contractor to return and complete the project to their satisfaction. *Id.* When that effort failed, they sued the home contractor in state court. They eventually settled the case and the home contractor paid them damages.

Meanwhile, the Ritas' loan from Greensky was outstanding. It is undisputed that the Ritas never paid any part of their debt. Greenksy's handling of that debt is at issue here. Two activities form the basis of the Ritas' claims: (i) Greensky's debt collection efforts, and (ii) Greensky's reporting of the delinquent debt to credit reporting agencies.

The Ritas allege that Greensky called their home telephone and Jill's cellular telephone more than 45 times to collect. Compl. at ¶ 16. Greensky also sent monthly statements to their home. *Id.* at ¶ 18. The Ritas allege that they informed Greensky, over the phone and in writing, that they were disputing the debt, had retained counsel, and did not wish to be contacted again. Yet, they claim they continued to receive calls from Greensky. *Id.* at ¶ 20, 29.

Eventually, Greensky "charged off" the Ritas' debt as delinquent and transmitted that information to Transunion, a credit reporting agency. *Id.* at ¶ 41. When Jill Rita noticed the delinquency on her credit report, she disputed it with Transunion. *Id.* at 43. Transunion notified Greensky of the dispute. Greensky reviewed its records and informed Transunion that the information it had provided was accurate.

B.   **Procedural History**

The Ritas originally filed suit against Greensky in Idaho state court. Greensky responded by removing the case to federal court. The parties consented to the undersigned magistrate judge (Dkt. 10).

In substance, the Ritas claimed that Greensky's credit reporting activities and debt collection practices violated the FCRA and FDCPA. However, their claims evolved. First, the Ritas were granted leave to amend their complaint (Dkt. 34). Then, instead of filing an amended answer, Greensky moved to dismiss (Dkt. 40). Next, the Ritas responded to Greensky's motion by moving to amend their complaint a second time (Dkt. 47). Finally, on March 21, 2024, this Court issued an order partially granting the motion to dismiss and partially granting the motion to amend. *See* 3/21/2024 Order (Dkt. 58). In part, that order excised certain claims that lacked private causes of action.

The Court's March 21st Order and the Ritas' subsequent Second Amended Complaint frame the case. Plaintiffs bring (i) one claim under § 1681s-2(b) of the FCRA, as well as (ii) five overlapping claims under the FDCPA. Defendants' summary judgment motion (Dkt. 92) contests liability under the FCRA and damages under the FDCPA.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

In deciding whether there is a genuine dispute of material fact, the Court must view the facts in the light most favorable to the nonmoving party. *Id.* at 255; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) ("Viewing evidence in the light most favorable to the

4

nonmoving party, we must determine whether there any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.") (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)). The court is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

### III. DISCUSSION

A.   **Local Rule 7.1**

As a starting point, the Court clarifies the factual record before it. District of Idaho Local Rule 7.1(c)(2) requires a party opposing summary judgment to submit a separate statement of material facts which they contend are in dispute. D. Idaho Civ. R. 7.1(c)(2); *see also* Fed. R. Civ. P. 56(c)(1). Where a party fails to do so, Local Rule 7.1(e)(2) provides that a court *may* consider uncontested material facts as undisputed for the purposes of summary judgment. D. Idaho Civ. R. 7.1(e)(2); *see also* Fed. R. Civ. P. 56(e)(3).

While the language of the rule is permissive rather than mandatory, courts in this district have strictly construed it against non-moving parties who fail to comply in most cases not involving pro se litigants. *Compare Dopp v. Taylor's Crossing Pub. Charter Sch., Inc.*, No. 4:13-cv-00387-BLW, 2015 WL 3616984 (D. Idaho June 9, 2015) (movant's statement of facts treated as uncontested); *Hansen v. U.S. Bank, Nat'l Ass'n*, No. 4:15-cv-00085-BLW, 2015 WL 5190749 (D. Idaho Sept. 4, 2015) (same); *Creager v. Young*, No. 1:15-cv-00024-BLW, 2017 WL 743880 (D. Idaho Feb. 24, 2017) (same); *Ludwig v. City of Pinehurst*, No. 2:22-cv-00121-AKB, 2024 WL 4124190 (D. Idaho Sept. 9, 2024) (where plaintiff's brief contains "statement of disputed facts", consider only Defendant's materials) *with Stranger v. Way*, 598 F.Supp.3d 929 (D. Idaho Apr. 14, 2022) (more permissive approach for pro se litigant); *ID 02, LLC v. Blewett*, 3:15-cv-

00540-JLQ, 2017 WL10752167 (D. Idaho Jan. 26, 2017) (also permissive, considering totality of record despite some failure to comply).

Here, Plaintiffs' Response does not contain a separate statement of facts. *See* Pls.' Resp. (Dkt. 95). Instead, in the body of the legal brief, Plaintiffs' Response contains a statement of facts and contests certain of Defendants' facts in substance, if not proper form. *Id.* at 2-4.

Defendants challenge Plaintiffs' failure to file a separate statement of disputed facts, as Local Rule 7.1(c)(2) requires. Accordingly, Defendants request the Court strictly enforce Local Rule 7.1(c)(2) against Plaintiffs – who are represented parties – and consider the facts proffered by Defendants as undisputed. For his part, Plaintiffs' counsel candidly admits his failure to comply with the rule and asks the Court to excuse it. While the Court appreciates Plaintiffs' counsel's candor, Plaintiffs' counsel had Defendant's separate statement of disputed facts before him when he drafted Plaintiffs' Response. This put him on notice that Plaintiffs' own, separate statement of disputed facts was required.

However, the Court will not strictly enforce Local Rule 7.1(c)(2) against Plaintiffs here because it is unnecessary to do so. As set forth below, even considering Plaintiffs' disputed facts, there is no genuine dispute of material fact and the outcome remains the same. However, the Court emphasizes that strict enforcement of Local Rule 7.1(c)(2) is the default and would have enforced the rule against Plaintiffs had a genuine dispute existed.

### B. Adrian Rita's Standing

Before reaching the substance of Plaintiffs' claims, the Court addresses the standing of Adrian Rita to sue.

A plaintiff has the burden of establishing that they have standing to raise the claims they assert. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 561 (1992). As an indispensable part of a

plaintiff's case, standing must be supported with the type and quantum of evidence required at a given stage of litigation. *Id.* To survive summary judgment, a plaintiff must set forth by affidavit or other evidence specific facts to demonstrate standing. *Id.* These facts must affirmatively appear in the record, and it is the burden of the party who seeks jurisdiction to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

In their motion for summary judgment, Defendants claim Adrian lacks standing to sue. They argue that he was neither a party to the loan, the subject of any credit reporting, nor the recipient of any collection communications. *See* Defs.' Br. at 19-20 (Dkt. 92-1).

In this Court's previous Order on Defendants' Motion to Dismiss, it allowed Adrian to proceed as a party notwithstanding a similar standing challenge. Therein, it observed that Plaintiffs' complaint alleged an "account in *Plaintiffs'* name to finance improvements for home construction of *their* home," as well as calls to "*Plaintiffs* …in an attempt to collect a disputed debt." Order at 10 (citing Compl. ¶¶ 12, 17, 20 (Dkt. )). Thus, at that stage, it resolved facts in non-movant Plaintiffs' favor and allowed Adrian to proceed as a party.

Now, on summary judgment and after the development of additional facts, Plaintiffs concede that Adrian lacks standing. They admit that Jill was the sole applicant on the loan and the exclusive subject of credit reporting and collection efforts related to it. Plaintiffs made this concession in Adrian's deposition and by failing to respond in their Response to Defendants' Motion to Summary Judgment. Dkt. 92-3 at 76, 81 (Adrian admitted in deposition testimony that he "didn't have an answer" for why he was a named plaintiff in the complaint); *see* Pls.' Resp. (Dkt 95). The Court is satisfied with this concession, and concludes that, as a result, no genuine issue of material fact exists as to Adrian Rita's standing. At this stage, Plaintiffs have simply not

met their required burden. *See Lujan*, 504 U.S. at 561; *Spencer*, 523 U.S. at 10-11. Accordingly, the Court will grant Defendants summary judgment and dismiss Adrian as a party to the suit.

### C.     The FCRA Claim

Defendants move for summary judgment on Plaintiffs' claim under §1681s-2(b) of the FCRA. Compl. at § § 37-61 (Dkt. 59). Defendants argue that there is no genuine dispute of material fact as it relates to the accuracy of their reporting of the Ritas' delinquent loan. The Court agrees.

Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 52 (2007)). As amended in 1996, the Act imposes duties on more than just credit reporting agencies (CRAs). It also covers individuals and entities that "furnish" credit information to CRAs, like Greensky did here.

The FCRA regulates furnishers of credit information pursuant to §1681s-2. Within §1681s-2, §1681s-2(b) provides that when a consumer disputes the completeness or accuracy of their credit information, the person or entity that furnished it should investigate the matter and takes steps to correct any mistake. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 46 (2024*); Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). Importantly, §1681s-2(b) is the only provision implicated in this case because it is the only provision of §1681s-2 that is privately enforceable. As this court's March 21 Order emphasized, this means a private individual may sue a furnisher under the FCRA only over their failure to investigate a filed dispute – not over an inaccuracy alone. 3/21/24 Order at 6-9 (Dkt. 58); *Nelson*, 282 F.3d at 1060; *Gorman*, 584 F.3d at 1154.

8

The Ninth Circuit has explained that to prevail under a §1681s-2(b) claim, among other elements, a plaintiff must prove both that there was an inaccuracy in their credit report and that the furnisher's investigation of that inaccuracy was unreasonable. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022). A prima facie showing of an inaccuracy is an essential hurdle a plaintiff must clear; "if there is no inaccuracy, then the reasonableness of the investigation is not in play." *Gross*, 33 F.4th at 1251.

An "inaccuracy" under the FCRA is information that is "patently incorrect" or "materially misleading" – that is, "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (quoting *Gorman*, 584 F.3d at 1163).

Plaintiffs assert two alleged inaccuracies in the credit reporting Greensky provided about Jill Rita to CRAs. First, they claim that her debt was "charged off" too early – before payments became due on the loan. Second, they argue that their repayment was conditioned on completion of the renovation work. Both claims are unsupported by the record.

As to the timing of the charge-off, the Ritas allege that their loan was charged off *before* payment obligations on the loan began. Specifically, they allege that it was charged off in September 2021, roughly five months after they first obtained it. Pls.' Resp. at 5 (Dkt. 95).

However, that assertion is erroneous. It is directly refuted by a Transunion report that shows Jill's history on the loan, which was submitted as an exhibit by both sides. That report, which provides a month-by-month summary of loan activity beginning in April 2021, clearly shows that the charge-off occurred in September *2022*, not September *2021*. Defs.' Reply at 6, Ex. I; Pls.' Ex. A, Dkt. 59 at 16. Plaintiffs' counsel conceded this date mistake in oral argument. Hr'g at 9:44:08.

9

Nor did the charge-off occur before payment obligations were due. The first page of the Ritas' loan agreement contained the language "Plan 2521. 84 payments. Beginning with 1st transaction, 12 month promo period with no payments required followed by 84 amortized payments based on the balance at the end of the promo." Primeaux Dec. at 5 (Dkt. 92-4). On the third page of the agreement, the agreement's Truth in Lending disclosure further provided that the Ritas would make 12 "payments" of $0.00 "beginning approximately one month after the 1st transaction and monthly thereafter for a total of 12 Months." *Id.* at 7. Thereafter, monthly payments would begin. *Id.* Greensky's transaction records reflect that the Ritas' first transaction occurred in April 2021. *Id.* at 35 (showing first entry as an "MTA Charge" of 4,345.41 on April 7, 2021). Accordingly, their promotional period extended until April 2022, and their payment obligations began at that time. Paragraph 10(b) of the loan agreement provided that the Ritas would be in default if they failed "make a payment within 60 days of when it was due under this Loan Agreement." *Id.* at 9. Reading these provisions of the loan agreement together, the Ritas were in default two months after their promotional period ended – around June 2022 – for failing to make any loan payments.

The Transunion report is entirely consistent with these terms. It shows a delinquency beginning in June 2022. Fleming Dec. at 112-113 (Dkt. 92-3). The last entry before the September charge-off, for the month of August 2022, shows that the Ritas were 90 days delinquent at that time. *Id.* Therefore, over three months without payment – a longer period than that explicitly provided by the loan agreement – passed between the time the Ritas' payment obligation began and the time the debt was charged off. The Ritas point to no evidence that contradicts this.

As a result, the timing of Greensky's charge-off of the Ritas' debt, and Greensky's subsequent furnishing of that information to Transunion, was not inaccurate. Rather, Greensky accurately reported that the Ritas were in default of their payment obligations under the loan agreement.

As it relates to the completion of the work, the Ritas claim that repayment of their loan was conditioned upon the home contractor's successful completion of the renovation. Because they allege the renovation was never completed, they say, their payment obligation was never triggered. Thus, Greensky did not legitimately charge-off their debt. Resp. at 9-10 (Dkt. 95). This argument is also without support in the record.

The loan agreement clearly provided that repayment was not conditioned on completion of the kitchen remodel. The first paragraph of the loan agreement read "Please be aware that if you authorize your Lender to make an initial advance under your Greensky Installment Loan to pay any initial payment required by the merchant, payments may become due under your Greensky Installment Loan prior to the completion of services by the Merchant." Primeaux Dec. at 5 (Dkt. 92-4). Thus, repayment could begin before the services at issue were delivered. Instead, the date on which the Ritas' payment obligation would begin was calculated exclusively by reference to their "first transaction": the date on which they first drew on their loan. *Id.* As described above, that date (in April 2021) started the clock on their repayment. *Id.* at 35. The status of their renovation played no part in those obligations.

To the extent Plaintiffs believe their agreement conditioned repayment on work being completed, that is based on a misunderstanding of the terms of the agreement. Specifically, Plaintiffs conflate the contract's "promotional period" with its "purchasing window." The purchasing window was the 6-month period when the Ritas could draw on the loan to pay their

contractor. The second paragraph of the first page of the loan agreement read "You have a purchasing window of 6 months to use your credit limit… All purchases must be made by 10/03/2021 (the "Purchase Window Expiration Date"). Your purchase window may close on the earlier of project completion or Purchase Window Expiration Date." Primeaux Dec. at 5.

Conversely, the promotional period dealt with repayment of the loan. It was the 12-month period – during which no loan payments were required, but interest would accrue – that began upon the first draw-down of the loan. *Id.* at 5 ("Beginning with 1st transaction, 12 month promo period with no payments required followed by 84 amortized payments based on the balance at the end of the promo"). Indisputably, that promotional period ended in April 2022, and the Ritas were required to begin servicing the loan in April 2022 regardless of the status of the renovation. *Id.* at 35. Accordingly, completion of the renovation was not a condition precedent to Plaintiffs' loan repayment; the only reference to "project completion" related to drawing from the loan, not repaying it. Because the Ritas did not make required loan payments from April 2022 forward, Greensky did not act in violation of the loan agreement by reporting the debt as delinquent in June 2022. On this point, there was no inaccuracy.

In sum, there is no genuine dispute of material fact as to either of the so-called "inaccuracies" claimed by Plaintiffs. Defendants accurately reported their charge-off of Plaintiffs' delinquent loan. And the Ritas' servicing of that loan was not, in any way, conditioned on the successful completion of the renovation by the home contractor. Accordingly, the Court grants Defendants summary judgment on the FCRA claim.[1]

---

[1] Even if the Ritas were able to proffer an inaccuracy under the FCRA, they would be unable to show that Greensky failed to reasonably investigate their dispute. The kind of investigation required by the FCRA depends on the information provided to a furnisher by the CRA that first receives the dispute; reasonableness is assessed objectively "in light of what [the furnisher] learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157. Here, Greensky

D.     The FDCPA Claims

Defendants move for summary judgment on Plaintiffs' FDCPA claims. *See* Compl. at ¶¶ 14, 31, 36, 76-77 (Dkt. 59). In their motion, Defendants do not contest liability under the FDCPA, but rather claim that no genuine dispute of material fact exists over damages. Specifically, they claim that Plaintiffs cannot establish actual damages, and did not plead statutory damages, so their FDCPA claim must fail. The Court agrees.

The FDCPA is a consumer protection statute that prohibits "abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004). The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011). For a plaintiff to recover under the FDCPA, there are three threshold requirements: (1) the plaintiff must be a "consumer"; (2) the defendant must be a "debt collector"; and (3) the defendant must have committed some act or omission in violation of the FDCPA. *Esget v. TCM Fin. Servs. LLC*, No. 1:11-CV-00062-AWI, 2014 WL 258837, at *5 (E.D. Cal. Jan. 23, 2014); *see also* 15 U.S.C. § 1692a(3)-(6).

The private-enforcement provision of the FDCPA, 15 U.S.C. §1692k, allows any aggrieved person to recover damages from any debt collector who fails to comply with any provision of the FDPCA. *Marx v. General Rev. Corp.*, 568 U.S. 371, 374 n.1 (2013). Section 1692k allows for: (i) actual damages, (ii) additional (statutory) damages not exceeding 1,000,

---

received a notice that the account was involved in litigation and was asked to verify the account's information was accurate. Ex. J, Dkt. 92-4 at 37-41. It verified that loan funds had been disbursed and that Plaintiffs had not made any payments. *Id.* at 5. Additionally, the history of communications between the parties shows Greensky was a third party to a dispute between customer and contractor. *See* Dkt. 92-4 at 38. There was no basis in the notice for concluding that Greensky possessed inaccurate information as to Plaintiffs' loan obligations, or that Plaintiffs were disputing their debt. Thus, Greensky conducted a reasonable investigation, and this provides an independent basis to grant summary judgment.

and (iii) attorney's fees and costs. 15 U.S.C. §1692k(a). In awarding statutory damages, the court must consider "the frequency and persistence of [the debt collector's] noncompliance," "the nature of such noncompliance," and "the extent to which such noncompliance was intentional." *Id.* at §1692k(b).

Defendants argue summary judgment is proper because Plaintiffs fail to show they are entitled to relief under this statutory scheme. "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Interpreting that language, the Ninth Circuit has explained that a failure to show any damages – where those damages are an essential element to a case – provides an independent basis for summary judgment. *City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1373 (9th Cir. 1992) (where plaintiffs failed to put forward "proper proof of damages at all . . . the district court did not err when it awarded summary judgment based upon this lack of evidence"). Summary judgment is appropriate where a party can make no showing as to the amount of damages that would provide competent evidence from which a jury could fairly estimate damages. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 808-09 (9th Cir. 1988). Once defendants make a showing that there is no genuine issue of material fact as to the amount of damages a plaintiff has sustained, the burden is on that plaintiff to come forward with specific facts showing a genuine issue for trial. *Id.* This burden may not be met by resting on the pleadings themselves. *Celotex*, 477 U.S. at 324.

Typically, a showing of actual damages is not an essential element of an FDCPA claim. Statutory damages are available, without proof of actual damages, to any plaintiff that proves

liability under the FDCPA. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir.1982). Here, however, Plaintiffs did not plead statutory damages under the FDCPA in their Second Amended Complaint. They confirmed that they no longer wished to pursue statutory damages in oral argument. Hr'g at 10:03:03. Instead, they seek actual damages, as well as punitive damages, an injunction, and attorneys' fees. Actual damages under the FDCPA, as opposed to statutory damages, require more than a showing of liability. There must be a causal link between the FDCPA violation and the resulting harm; therefore, only certain types of harm can be redressed. 15 U.S.C. § 1692k(a)(1) (allowing actual damages "sustained…*as a result* of such failure" to comply with the Act) (emphasis added); *Baker*, 677 F.2d at 780 (noting that actual damages incurred under the FDCPA must be "caused by abusive debt collection practices.").

Due to this unusual posture, Plaintiffs must demonstrate more than liability to prevail on their FDCPA claims. They must also show they are entitled to claim the actual damages (as well as other remedies) they seek. Because Plaintiffs' Complaint claims only actual damages, entitlement to those damages becomes an "element essential to [Plaintiffs'] case… on which [Plaintiffs] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323. In sum, the issue of whether Plaintiffs' failure to prove damages undermines their FDCPA claim entirely is a question properly considered by this court on summary judgment. Each form of relief Plaintiffs request under the FDCPA fails at the summary judgment stage.

As it relates to actual damages, Plaintifffs' complaint alleges two types of actual damages that Jill Rita suffered as a result of Defendants' alleged FDCPA violation: (i) emotional distress damages of $100,000, and (ii) business and reputational damages of $400,000. Compl. at ¶¶ 82-83. Permissible damages under the FDCPA include both business and reputational damages and emotional distress damages. *See, e.g., Baker*, 677 F.2d at 780 (emotional distress damages);

15

*Burns v. LVNV Funding LLC*, No. 3:23-cv-00355-IM, 2024 WL 4529032 (D. Oregon Oct. 18, 2024) (business and reputational damages). However, as mentioned above, actual damages may be recovered under the FDCPA only if an FDCPA violation caused the underlying harm to the plaintiff. *Baker*, 677 F.2d at 780.

Over the course of briefing and oral argument, Plaintiffs forfeited their emotional damages claim. Defendants' Statement of Facts, which references Jill Rita's deposition, attacked that claim. Specifically, it asserted that Jill had not sought medical, mental, or psychological treatment for any trauma stemming from debt collection efforts, and did not recall reporting stress over the debt to her primary care physician. Ds.' SOF at ¶ ¶ 33-34, 38 (Dkt. 92-2). It noted that Jill testified that the only physical symptom connected to her claim was insomnia. *Id.* at ¶ 35. And finally, it recounted Jill's admission that the stress she faced during the events at issue were only partially caused by Defendants' conduct – and that the conduct causing her stress was her negative credit reporting, not debt collection communications. *Id.* at ¶ ¶ 36-37, 41.

Defendants supplemented their argument with Ninth Circuit caselaw setting out a threshold for recovery of emotional distress damages under the FDCPA. Those cases show that emotional distress damages are only available where emotional distress is suffered as a result of the defendant's FDCPA violations. *See, e.g., Riley v. Giguiere*, 631 F. Supp.2d 1295, 1315 (E.D. Cal. 2009). In addition, the circumstances must make it obvious a reasonable person would suffer significant emotional harm, rather than merely trivial or transient harm. *Russell v. GC Services Ltd. Partnership*, 476 F.Supp.3d 1097, 1103 (E.D. Wash. Aug. 4, 2020); *Costa v. National Action Financial Services*, 634 F.Supp.2d 1069, 1078 (E.D. Cal. Dec. 19, 2007). Because the record reflected minor harm that had not been caused by debt collection

16

communications, Defendants argued, Jill was not entitled to emotional distress damages under her FDCPA claim.

The factual section of Plaintiffs' Response contained no response to these assertions. *See* Ps.' Resp at 2-5 (Dkt. 95). Similarly, the Argument section of the Response did not address the viability of Jill's claimed emotional distress damages. *Id.* at 10-11. Then, at oral argument, Plaintiffs confirmed that they no longer wished to pursue their claim for emotional distress damages. Hr'g at 10:04:46. With this concession, no genuine dispute of material fact remains as to Plaintiffs' emotional distress damages under the FDCPA.

Plaintiffs' claimed business and reputational damages also suffer from a causation problem. Here, Plaintiffs' arguments conflate damages allegedly resulting from Defendants' credit reporting and debt collection efforts. Under their FDCPA claim, Plaintiffs allege damages that seemingly relate only to harm stemming from Defendants' credit reporting actions. Namely, Plaintiffs allege that negative credit reporting caused Jill Rita to suffer "damage to her business and financial reputation" which prevented her from obtaining a high-paying job and a home loan at market rates. Compl. at ¶ 82; *see also* Resp. at 5, 11. Plainly, these damages do not relate to Defendants' debt collection efforts, which undisputably were not publicized in any way. Indeed, all debt collection telephone calls were placed to Jill Rita's home line and private cellular telephone and all 14 monthly loan statements (showing delinquent payments) were mailed to her home (not business) address. Dkt. 92-3 at 45-48, 77-78; Compl. at ¶¶ 16-18. By contrast, cases awarding reputational or business damages under the FDCPA generally involve disclosure or communication of debt collection efforts to third parties. *See, e.g., Burns*, 2024 WL 4529032 at *5 ("publicly filed collections lawsuit caused Plaintiff to receive attention from the press and negatively impacted Plaintiff's reputation in the community and amongst his friends and

professional network"); *Esget*, 2014 WL 258837 at *7 (plaintiff suffered actual damages when she was disciplined by her supervisor at work due to repeated collection calls). As Defendants emphasize, no such disclosure was made here. MSJ at 11-12.

In response, Plaintiffs put forward no record evidence as to how these personal and private communications give rise to reputational or economic harm; instead, they continue to focus on harm resulting from negative credit reporting. Resp. at 11. Thus, Plaintiffs have not demonstrated the required causal link between Defendants' debt collection efforts and the alleged business and reputational damages suffered by Jill Rita. Accordingly, Plaintiffs have not raised a genuine dispute of material fact regarding actual damages for their FDCPA claim.[2]

Plaintiffs also seek an injunction directing Greensky to remove its negative credit reporting about her and an award of punitive damages. This request for relief runs headfirst into the remedies provision of the FDCPA, § 1692k. It is well-established that § 1692k limits remedies available to those it expressly designates: actual damages, statutory damages up to $1,000, and costs. *See, e.g., Keeton v. Countrywide Home Loans, Inc.*, 217 F.Supp.3d 177, 181 (D.D.C. 2016). As a result, Plaintiffs cannot secure injunctive relief or punitive damages under the FDCPA.

Finally, Plaintiffs claim entitlement to attorneys' fees and court costs. However, the FDCPA makes fees and costs available only to prevailing parties. 15 U.S.C. § 1692k(a)(3). As none of Plaintiffs' claims survive at summary judgment, Plaintiffs are not a prevailing party able

---

[2] Jill Rita also received a few debt collection calls to her cellular telephone while at work. She suggests that these calls impacted her conduct at work and resulted in "negative employment opportunities." *See* Compl. at ¶ 22; Dkt. 92-3 at 47-48. While this line of argument is more promising, there is nothing in the record to support it. At the hearing, Plaintiffs referenced an affidavit that they allege substantiates the effect of these calls on Mrs. Rita's work. Hr'g at 10:07:44. However, that affidavit is not in the record, nor is any other evidence raising a genuine dispute of fact that debt collection calls to Mrs. Rita's cell phone caused her business or reputational harm.

to recover fees and costs. *See, e.g., Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 186 (4th Cir. 2007) ("there is little reason to suppose that a successful action is anything more or less than an action brought by a prevailing party.").

In sum, Plaintiffs have not alleged and demonstrated any compensable damages under the FDCPA. Without damages, Plaintiffs have failed to set forth a genuine dispute of material fact that they are entitled to relief under the FDCPA. Accordingly, Plaintiffs' FDCPA claim fails as a matter of law.

## IV. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Dkt. 92) is GRANTED.



DATED:  December 22, 2025

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge